FILED

2016 Nov-15  PM 03:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **JIMMY DEE JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:15-CV-1149-VEH** |
| | ) | |
| **CAROLYN W. COLVIN, ACTING** | ) | |
| **COMMISSIONER, SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff Jimmy Dee Johnson ("Mr. Johnson") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for Disability Insurance Benefits ("DIB").[1] Mr. Johnson timely pursued and exhausted his administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C.

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

§ 405(g).[2] For the following reasons, the court **REVERSES** and **REMANDS** the Commissioner's decision for further consideration in accordance with this opinion.

### STATEMENT OF THE CASE

Mr. Johnson was 59 years old at the time of his hearing before the Administrative Law Judge ("ALJ"). *Compare* Tr. 26 *with* Tr. 32. He has completed the 11th grade. Tr. 148. His past work experience includes employment as a supervisor/assistant manager and auto mechanic helper. Tr. 32, 148-50. He claims he became disabled on July 1, 2002, due to bilateral hearing loss, diabetes, hypertension, kidney cancer, and arthritis. Tr. 30, 133, 146-56, 159-66, 169-75, 178-80. His last period of work ended in 2002. Tr. 52.

On May 15, 2012, Mr. Johnson protectively filed a Title II application for a period of disability and DIB. Tr. 26. On August 7, 2012, the Commissioner initially denied these claims. *Id.* Mr. Johnson timely filed a written request for a hearing on October 9, 2012. *Id.* The ALJ conducted a hearing on the matter on October 31, 2013. *Id.* On March 13, 2014, he issued his opinion concluding Mr. Johnson was not disabled and denying him benefits. Tr. 23. He timely petitioned the Appeals Council to review the decision on March 25, 2014. Tr. 20. On June 7, 2015, the Appeals

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

Council issued a denial of review on his claim. Tr. 1.

Mr. Johnson filed a Complaint with this court on July 9, 2015, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on January 13, 2016. (Doc. 6). Mr. Johnson filed a supporting brief (doc. 10) on March 10, 2016, and the Commissioner responded with her own (doc. 13) on April 23, 2016.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the

court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

4

is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;

(2)    whether the claimant has a severe impairment;

(3)    whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)    whether the claimant can perform his or her past work; and

(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## ALJ FINDINGS

5

After consideration of the entire record, the ALJ made the following findings:

1.   Mr. Johnson met the insured status requirements of the Social Security
     Act through December 31, 2007.

2.   He had not engaged in substantial gainful activity since July 1, 2002, the
     alleged disability onset date.

3.   He had the following severe impairments: bilateral profound
     sensorineural hearing loss requiring a left hearing aid and no useful
     hearing in the right ear (20 C.F.R. § 404.1520(c)).

4.   He did not have an impairment or combination of impairments that met
     or medically equaled one of the listed impairments in 20 C.F.R. Part
     404, Subpart P, Appendix 1.

5.   He had the residual functioning capacity ("RFC") to perform a full range
     of work at all exertional levels but with the following non-exceptional
     limitations: no effective hearing in the right ear, required amplification
     through a hearing aide in the left ear, and required observation of
     individuals speaking.

6.   He was unable to perform any past relevant work.

7.   He was "54 years old, which is defined as a younger individual age 18-

49, on the date last insured."[4]

8.    He has a limited education and is able to communicate in English.

9.    Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that he was "not disabled," whether or not he had transferable job skills.

10.   Considering his age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that he could perform.

11.   Mr. Johnson had not been under a disability, as defined in the Social Security Act, from July 1, 2002, the alleged onset date, through December 31, 2007, the date last insured.

Tr. 28-33.

---

[4] An individual aged 54 falls into the age category of a person "closely approaching advanced age" rather than that of a younger person under age 50. *Cf.* 20 C.F.R. §§ 404.1563(c), 404.1563(d). However, since the ALJ factored in Mr. Johnson's correct age in the hypothetical questions posed to the vocational expert, this error is harmless. Tr. 55; *see, e.g.*, *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) ("We find that the ALJ made erroneous statements of fact, but we conclude that this was harmless error in the context of this case and that the ALJ applied the proper legal standard when considering the vocational factors."); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (unpublished) ("However, when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citing *Diorio*, 721 F.2d at 728).

## DISCUSSION

The court can reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5] However, the court "abstains  from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Mr. Johnson urges this court to reverse the Commissioner's decision to deny his  benefits on three grounds: (1) because the ALJ improperly determined his RFC from the alleged onset date through the last date he was insured; (2) because the ALJ failed to meet the fifth step burden of establishing there were other jobs available which existed in significant numbers; and (3) because the ALJ improperly discredited his subjective testimony of the significance of his hearing loss and other limitations. (Doc. 10 at 15-16). The court has carefully reviewed the record and finds that this case should be remanded for further development as it pertains to the ALJ's RFC formulation for Mr. Johnson. The court also finds that the ALJ committed reversible

---

[5]  *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

error with respect to his reliance upon certain non-comprehensive hypothetical questions that he posed to the vocational expert. The court addresses each of these issues more fully below.

## I.     The ALJ's Disability Determination Is not Supported by Substantial Evidence

While Mr. Johnson has the burden of proving his disability, the ALJ has a basic obligation to develop a full and fair record.  *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)). When the ALJ has neglected to develop a full and fair record, the court "has required the Secretary to reopen the case 'until the evidence is sufficiently clear to make a fair determination as to whether the claimant is disabled or not.'"  *Thorne*, 607 F.2d at 220 (quoting *Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974)).

### A.     *The ALJ's Decision Does not Substantiate That He Followed the Proper Legal Standards When Determining Mr. Johnson's RFC*

Mr. Johnson has alleged disability from bilateral hearing loss, diabetes, hypertension, kidney cancer, and arthritis. Tr. 30, 146-56. However, the ALJ found that the only severe impairments at the time the claimant's insured status expired on December 31, 2007, were bilateral profound sensorineural hearing loss in the left ear and no useful hearing in the right ear, and he determined that Mr.

9

Johnson had the RFC to perform a full range of work at all exertion levels with only hearing loss-related limitations. Tr. 29.

The RFC assessment is based on all of the relevant evidence of a claimant's remaining ability to do work, despite impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). A claimant's RFC is a medical determination made by the ALJ. *See generally* 20 C.F.R. §§ 416.945, 416.946. To determine whether a claimant can work, an ALJ should consider the claimant's RFC as well as his age, education, and work experience. *Lewis*, 125 F.3d at 1440. The ALJ must consider all of the claimant's impairments, including impairments that are not severe. *See* 20 C.F.R. §§ 404.1520(e) and 404.1545; SSR 96-8p.

In the ALJ's assessment, the opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotation marks omitted). "Good cause" exists when

• the treating physician's opinion was not bolstered by the evidence,

• the evidence supported a contrary finding; or

• the treating physician's opinion was conclusory or inconsistent with

10

his or her own medical records.

*Id.* at 1241 (citation omitted). The ALJ must clearly articulate his or her reasons

for disregarding a treating physician's opinion, and the failure to do so is

reversible error. *Lewis*, 125 F.3d at 1440 (citation omitted); *see also* 20 C.F.R. §

404.1527(c)(2) ("We will always give good reasons in our notice of determination

or decision for the weight we give your treating source's opinion.").

In *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987), the Eleventh Circuit

explained the ALJ's obligation to consider severe as well as non-severe conditions

in combination when deciding a claimant's RFC:

> We also find that the ALJ failed to consider all of Walker's impairments
> in evaluating the evidence.  It is established that the ALJ must consider
> the combined effects of a claimant's impairments in determining
> whether she is disabled. *Jones*, 810 F.2d at 1006.  When "a claimant has
> alleged a multitude of impairments, a claim for social security benefits
> may lie even though none of the impairments, considered individually,
> is disabling." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).
> Furthermore, "it is the duty of the ... [ALJ] to make specific and
> well-articulated findings as to the effect of the combination of
> impairments and to decide whether the combined impairments cause the
> claimant to be disabled." *Id.*; 20 C.F.R. § 416.923. It is clear that in this
> case the ALJ did not consider the combination of Walker's impairments
> before determining her residual functional capacity.  The ALJ made
> specific reference only to Walker's left ankle and obesity. The ALJ's
> findings do not mention Walker's arthralgias in the right knee, phlebitis
> in the right arm, hypertension, gastrointestinal problems, or asthma,
> except to the extent that these "subjectiv[e] complain[t]s do not establish
> disabling pain."  Furthermore, Walker complains of pain in both legs.
> We discuss further the inadequacy of the ALJ's treatment of Walker's

pain complaints in Section III.  As we observed in *Chester*, 792 F.2d 129, "pain may not be disabling in and of itself, [but] it may be disabling when considered along with . . . other impairments." *Id.* at 132. The ALJ's failure to consider Walker's physical impairments and pain complaints in combination alone requires that the decision be reversed and remanded for reconsideration. *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985).  Thus, we remand this case for review of all of the evidence under the proper legal standards.

*Walker*, 826 F.2d at 1001-02 (emphasis added).

The Commissioner claims that the ALJ "properly evaluated the evidence from the relevant period that demonstrates treatment by Dr. Lee." (Doc. 13 at 7) (citing Tr. 28-33). I disagree. In his RFC assessment, the ALJ totally ignored as "untimely" medical treatment records without stating any "good cause" for doing so. Instead, the ALJ wrote

The claimant testified he has urinary problems and medical records from Lawrence Lee, M.D. and Susan Ferguson, M.D. show periods of uncontrolled diabetes, a syncope episode secondary to low blood sugar, arthritic pain, and that the claimant required a left radial nephrectomy secondary to stage III renal carcinoma. <u>Unfortunately, these conditions all occurred subsequent to the date last insured and these records fail to assist in establishing disability from the alleged onset date through the date last insured</u>.

Tr. 31 (emphasis added). A few paragraphs later, the ALJ noted,

<u>Although the claimant's additional limitations from the combination of uncontrolled diabetes in 2007 and left kidney removal in 2009 could possibly reduce him to a range of light exertion at that time</u>, and his advanced age as of November 27, 2008 presents a different situation, but in this case the claimant's insured status expired

December 31, 2007, and the only severe impairment at that time is the hearing loss.

*Id.* (emphasis added). These two passages are the ALJ's <u>only</u> references to Dr. Lee's allegedly untimely medical opinions.

Initially, I note that Dr. Lee's medical records of "uncontrolled diabetes <u>in 2007</u>" necessarily reflect treatment occurring <u>before</u> the claimant's date last insured: December 31, 2007. Additionally, medical opinions based on treatment occurring <u>after</u> the date of the ALJ's decision <u>may</u> be chronologically relevant. *Washington v. Social Sec. Admin., Com'r*, 806 F.3d 1317 (11th Cir. 2015)(per curiam) (citing *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983)(requiring the ALJ on remand to consider the opinion of a treating physician who examined the claimant eighteen months after his insured status expired and nearly five years after he became disabled), *superseded on other grounds by statute*, 42 U.S.C. § 423(d)(5)). <u>Absent good cause</u>, a treating physician's opinion is entitled to substantial weight even if the physician's treatment did not fall squarely within the relevant period of time. *Dempsey v. Comm'r of Social Sec.*, 454 F. App'x 729, 733 n. 7 (11th Cir. 2011).[6]

---

[6] As an unpublished opinion, *Dempsey* is not binding on this court; instead, it is persuasive authority. *See* 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

13

Here, the ALJ failed to demonstrate he sufficiently considered the opinions of Dr. Lee, both during and immediately after the period between the onset date and the date last insured. The office treatment records from Dr. Lee and Lee Internal Medicine, found in Exhibit 6F, span from May 10, 2004 to July 7, 2012. Tr. 272-489. On several occasions between 2004 and 2007, Dr. Lee diagnosed Mr. Johnson with hypertension, arthritis, and type two diabetes, among other conditions.[7] *See, e.g.* Tr. 356, 368. Further, on January 31, 2008, less than a month after the date last insured, Dr. Lee proscribed Mr. Johnson medication for hypertension, diabetes, and hypercholesterolemia. Tr. 352-353.

Here, although the ALJ found Mr. Johnson's arthritis, hypertension, and type two diabetes to be non-severe conditions when he evaluated them separately (Tr. 28), the ALJ's decision lacks any indication that he considered their collective impact with each other or in combination with Mr. Johnson's two severe impairments when he determined his RFC. *Cf. Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) ("In evaluating a claimant's residual function capacity, the ALJ must consider a claimant's impairments in combination." (citing 20 C.F.R. §

---

[7] Dr. Lee diagnosed Mr. Johnson with several other impairments or illnesses prior to the date last insured, including high cholesterol, eczema, and obesity. *See, e.g.* Tr. 359, 361. However, Mr. Johnson has only raised issue on appeal with the ALJ's findings in relation to his diabetes, arthritis, and hypertension diagnoses and does not raise that his kidney disease was chronologically relevant. Tr. 15, 17, 20. Therefore, the court limits its review to whether the ALJ properly included these three diagnoses in his RFC assessment.

404.1545 (1989))).[8]

The ALJ erred both in finding that impairments described in Dr. Lee's medical opinions all occurred subsequent to the date last insured and in failing to consider the implications of Mr. Johnson's arthritis, hypertension, and type two diabetes, which were timely to his claim, in forming his RFC assessment. Perhaps the ALJ did factor in Mr. Johnson's non-severe impairments in combination when forming the RFC, but the court simply cannot speculate that the ALJ followed proper legal standards when the express wording of his decision states otherwise.

Because the ALJ rejected Dr. Lee's medical records of Mr. Johnson's hypertension, diabetes, and arthritis solely based on the ALJ's incorrect determination that they were untimely, I cannot determine whether the ALJ followed the proper legal standards in assessing Mr. Johnson's collection of severe and non-severe impairments. Therefore, substantial evidence does not support the ALJ's RFC assessment and remand for further consideration is appropriate.

B. *The ALJ Failed To Develop a Full and Fair Record With a Medical Source Statement or Other Medical Evaluation*

---

[8] *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("At step three the ALJ must determine if the applicant has a severe impairment or a combination of impairments, whether severe or not, that qualify as a disability.") (emphasis added); *id.* ("The ALJ must consider the applicant's medical condition taken as a whole."); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

In support of his RFC finding for Mr. Johnson, the ALJ did not identify a medical source statement[9] or a physical capacities evaluation conducted by a physician that substantiates Mr. Johnson's ability to perform a full range of work at all exertional levels given his non-severe conditions of asthma, type two diabetes, and hypertension together with his severe impairments of bilateral profound sensorineural hearing loss requiring a left hearing aid and no useful hearing in the right ear. Such an omission from the record is significant to the substantial evidence inquiry pertaining to the ALJ's RFC determination. *See, e.g., Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("The ALJ failed to refer to-and this Court has not found-a proper, medically determined RFC in the record.").

Neither the Eleventh Circuit nor this court has adopted a bright line test to determine whether the lack of a treating physician's medical source statement as to a claimant's functional ability calls for a remand. *Rose v. Astrue,* No. 11-CV-1186-VEH, slip op. at 17–18 (N.D. Ala. Nov. 1, 2011); *Eljack v. Astrue*, No. 2:11-

---

[9]  Medical source statements are "medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.  Medical source statements are to be based on the medical sources' records and examination of the individual; *i.e.*, their personal knowledge of the individual. Therefore, because there will frequently be medical and other evidence in the case record that will not be known to a particular medical source, a medical source statement may provide an incomplete picture of the individual's abilities." SSR 96-5p.

CV-1854-VEH, 2012 WL 2476405, at \*7-8 (N.D. Ala. June 22, 2012). In some cases, a treating physician's medical source statement is necessary. *See, e.g.*, *Coleman v. Barnhart,* 264 F. Supp. 2d 1007, 1010-11 (S.D. Ala. 2003). In others, it is not. *See, e.g.*, *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923-24 (11th Cir. 2007) (unpublished) (holding that, even though the ALJ discounted a treating physician's opinion regarding claimant's functional abilities and limitations, there otherwise remained substantial evidence to find the claimant not disabled). The outcome of these cases turns upon the sufficiency *vel non* of other evidence in the record that supports the ALJ's RFC determination, even in the absence of a medical source statement from the claimant's treating physician.

However, this court has recognized the Eleventh Circuit's view that "the absence of a physician's opinion regarding a plaintiff's functional limitations does not morph into an opinion that the plaintiff can work." *Clemmons v. Astrue*, No. 3:06-CV-1058-VEH, (Doc. 22 at 11) (N.D. Ala. Jun. 11, 2007) (discussing *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988)). "Such silence is equally susceptible to either inference, therefore, no inference should be taken." *Id.* This court has similarly noted, "where the treating physician has not discharged the patient from treatment and the physician has not made, and was not asked to make, a determination regarding plaintiff's functional capabilities, there is no substantial

17

evidence to support an ALJ's functional capacity finding." *Clemmons*, (Doc. 22 at 11) (citing *Lauer v. Apfel*, 245 F.3d 700, 705 (8th Cir. 2001)).

The court acknowledges that the ALJ did refer in his opinion to medical records from Dr. Pappas and Dr. Lee pertaining to Mr. Johnson. (*See, e.g.*, Tr. 31 (citing to Exhibits 2F, 3F, 6F)).  However, these referenced documents merely report raw clinical findings related to Mr. Johnson's individual conditions. Moreover, neither of these two treating physicians provided any assessment of Mr. Johnson's impairments in vocational terms. *See, e.g., Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("Where the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make that connection himself.'") (citation omitted).

As another district judge of this court aptly explained the RFC issue in the context of an ALJ who comparably determined, without the benefit of a physical capacities evaluation conducted by a physician, that the claimant was not disabled:

> While the Record contains Ms. Rogers'[s] medical treatment history, it lacks any physical capacities evaluation by a physician. The ALJ made his residual functional capacity evaluation without the benefit of such evaluation. An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is

18

involved that the effect would be apparent to a lay person. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir. 1996). In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required. *Id.* In order to have developed a full, fair record as required under the law, the ALJ should have re-contacted Ms. Roger's [sic] physicians for physical capacities evaluations and/or sent her to physicians for examinations and physical capacities evaluations. Further, Ms. Rogers' [s] ability to lift and to manipulate objects must be thoroughly evaluated by at least one physician. These evaluations shall be obtained upon remand. Ms. Rogers'[s] residual functional capacity was not properly determined nor supported by substantial evidence in this case.

*Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006) (emphasis added); *see also Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record.") (emphasis added) (citing *Perez v. Sec'y of Health & Human Servs.*,958 F.2d 445, 446 (1st Cir.1991)); *Rohrberg*, 26 F. Supp. 2d at 311 ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (emphasis added) (citing *Rodriguez v. Sec'y of Health & Human Servs.*, 893 F.2d 401, 403 (1st Cir. 1989)); *cf. Giddings v. Richardson*, 480 F.2d 652, 656 (6th Cir. 1973) ("To meet such a *prima facie* case it is not sufficient for the government to rely upon inconclusive medical discussion of a claimant's problems without relating them to

19

the claimant's residual capacities in the field of employment.") (emphasis added).

This case is also not one of the rare instances where the RFC is so apparent that the ALJ is justified in making a determination without support from a medical source statement. *See, e.g. Castle v. Colvin*, 557 F. App'x 849, 850-53 (11th Cir. 2014) (finding that when the claimant never visited a doctor between the onset date and date last insured, denied having the problems that normally accompany his alleged disability, reported engaging in activities that fell into the category of light work, and had been given a release without work restrictions by a doctor, a medical source statement was not required).

Comparable to *Rogers*, *Manso-Pizarro*, and other similar cases, a lay person such as an ALJ is not able to discern Mr. Johnson's work-related exertional abilities and appropriate non-exertional restrictions based upon the unfiltered information contained in his medical records.  The court specifically notes that, unlike the claimant in *Castle*, Mr. Johnson had ceased working as of 2002 on the advice of Dr. Pappas. Tr. 212.[10]

---

[10]  As the ALJ pointed out, Dr. Pappas completed insurance forms in June 2008, six months after the date Mr. Johnson was last insured, that limited Mr. Johnson to a 20-pound lifting capacity and noted that Mr. Johnson could only walk for a maximum of two hours a day; could only stand for a maximum of four hours a day; was not capable of performing push and pull movements; could not climb, twist, bend, stoop, or operate heavy machinery; and was not expected to improve. Tr. 31, 213. As noted above, medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant. *Washington v. Social Sec. Admin., Com'r*, 806 F.3d 1317 (11th Cir. 2015)(per curiam) (citing *Boyd v. Heckler*,

Therefore, in the absence of a medical source statement and/or any physical capacities evaluation[11] conducted on Mr. Johnson by a physician that corroborates the ALJ's determination that he is capable of performing a full range of work at all exertion levels with only non-exertional hearing-based limitations, the record has not been adequately developed. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne*, 607 F.2d at 219); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history."). In light of the above analysis, the ALJ's disability decision is not supported by substantial evidence, and remand is appropriate.

## II.   The ALJ Posed Two Incomplete Hypothetical Questions and Erroneously Relied Upon Only Those Answers To Support his Disability Determination

Alternatively, the ALJ's disability determination is flawed in his reliance upon expert testimony because of the incomplete questions that he presented to the vocational expert ("VE"), Norma Strickland. The ALJ posed two separate

---

704 F.2d 1207, 1211 (11th Cir. 1983). Therefore, these conditions should have factored into the work-related exertional abilities that the ALJ considered in his determination, along with a medical source statement by a medical professional.

[11]   In his analysis, the ALJ declined to follow or cite to the assessment made by the state agency disability specialist, who is "not a medical professional." Tr. 31 (citing Exhibit 1A).

hypothetical questions to the VE. The first hypothetical question was:

> This individual had an age transition from younger to closely approaching advanced age. If that age change makes a different for any factor in the hypothetical I'll ask you to address that specifically. This individual has a limited education. And has experience as both helper and supervisor as you described those jobs. This individual has no exertional limitation, but does have no effective hearing in the right ear. Needs amplification through a hearing [aid] in the left ear. And also is benefitted from direct observation of individuals who are speaking.

Tr. 55. In response to the first question, the VE testified that the hypothetical person would not be able to perform Mr. Johnson's past work as supervisor or helper but would be able to perform jobs as a route delivery clerk, meat clerk, and library page.  Tr. 56-57. The ALJ did not list any of Mr. Johnson's non-severe impairments when asking this question and did not reference, either directly or indirectly, his asthma, hypertension, or type two diabetes. The second hypothetical was,

> This individual has the same age, education, and work experience that we used in the previous hypothetical. And this individual has very similar functional limitations. There would be no exertional limitation. But this individual in hypothetical number two would be determined to be totally deaf. No useful hearing whatsoever. Would there be any unskilled jobs that the second hypothetical individual could perform?

> In response, the VE provided examples of jobs this hypothetical person could do, such as hand packager, route delivery clerk, meat clerk, and library page.

Tr. 59-60. Again, the ALJ did not reference Mr. Johnson's non-severe arthritis,

hypertension, or type two diabetes.

In Step Five, the burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). In order for the testimony of a VE to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises <u>all</u> of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing *Jones*, 190 F.3d at 1229) (emphasis added); *see also Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1220 (11th Cir. 2001) (finding an ALJ should have included claimant's complaints of "headaches, medication history, significant memory or concentration problems, fatigue, wrist pain, and dizziness" in the hypothetical question posed to the VE.).

In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011), the Eleventh Circuit determined that because the ALJ "asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for all of [claimant]'s impairments, the vocational expert's testimony is not 'substantial evidence' and cannot support the ALJ's conclusion that [claimant] could perform significant numbers of jobs in the national economy."

In finding that Mr. Johnson was not disabled, the ALJ necessarily relied on the VE's answers to the first and second hypothetical questions. However, neither of

these questions factored in Mr. Johnson's impairments of arthritis, type two diabetes, and hypertension. Therefore, the ALJ's hypothetical questions were incomplete, and he erroneously relied on the answers to these questions as posed to support his disability determination.

The court does not need to reach the question of other objections to the ALJ's conclusion if remand is required on an issue raised on appeal. *See generally Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1991). Thus, it is unnecessary to address Mr. Johnson's arguments relating to the ALJ's credibility determination of Mr. Johnson's subjective testimony. (Doc. 10 at 24-27). However, on remand, the Commissioner shall consider the authorities cited by the parties on this issue.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the Commissioner did not apply proper legal standards in reaching her final decision. Accordingly, the decision will be **REVERSED** and **REMANDED** by separate order.

**DONE** and **ORDERED** this the 15th day of November, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

24